198 So.2d 799

**Rufus JONES, Jr.**

v.

**STATE.**

**1 Div. 43.**

Court of Appeals of Alabama.

April 18, 1967.

E. Graham Gibbons, Mobile, for appellant.

MacDonald Gallion, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

JOHNSON, Judge.

Appellant, after a plea of not guilty, was tried by a jury in the Circuit Court of Mobile County, Alabama, for the offense of manslaughter in the second degree which was couched in language as follows, "that within twelve months before the commencement of the prosecution he did unlawfully, but without malice, or the intention to kill, kill John Robert Vann, by negligently running an automobile into, upon or against an automobile in which the said John Robert Vann was riding, against the peace and dignity of the State of Alabama." For this offense appellant was sentenced to six months hard labor for the County of Mobile. This appeal is made from a judgment imposing this sentence and from the denial of a motion for a new trial.

On December 19, 1964, between 11:00 and 12:00 P.M. a collision between two automobiles occurred at the intersection of South Wasson Street and U.S. Highway No. 45, otherwise known as St. Stephens Road, in the City of Prichard, Alabama. One automobile, a 1951 or 1952 Chevrolet, was operated by John Robert Vann and the other, a 1957 Pontiac, was operated by appellant, Rufus Jones, Jr. On Decem-ber 22, 1964, as a result of injury received in this collision, John Robert Vann died.

The State's first witness was J. M. Vann, father of the deceased, who testified that the automobile involved in the wreck was owned by his son who had lived in Citronelle, Alabama, all of his life.

Rev. Ralph Branham, pastor of the First Baptist Church of Kushla, Alabama, located on Highway No. 45, testified that he was driving on this highway at approximately midnight on the night in question and was approximately a block and a half south of the intersection of Highway No. 45 and South Wasson Street when he heard a crash and that he drove to the scene of the accident and observed that there had been a collision of a Pontiac and a Chevrolet; that the Chevrolet was on fire, which was later extinguished by firemen; that in the Pontiac he saw appellant slumped over a bent steering wheel; that he saw what appeared to be a liquor bottle on the front floorboard of appellant's car; that he did not notice a top on this bottle; and that "the smell of alcohol was quite strong in appellant's car." The witness further stated that he observed the firemen assisting appellant out of his automobile and that "he did revive" and "was able to get out and walk around under his own power."

The witness testified that he examined both cars and "did not notice any unusual damage" to either side of the Chevrolet but did notice that the right front wheel was damaged. He said that the Pontiac was damaged in the front in that the "radiator had been bent in towards the car in almost a U' shape" and "the steering wheel and the windshield were the places that I [he] noticed damaged."

Richard M. Pruitt, Police Patrolman for the City of Prichard, testified that he arrived at the scene of the accident at approximately 11:40 P.M. and found Rev. Branham there. He referred to a diagram which he drew up the morning of the trial from a diagram which he had drawn

up on the night of the accident. The witness stated that the Pontiac was upright and against the tree with not enough room to get between it and the automobile; that the Chevrolet was damaged on the right front and had apparently "rolled"; that he could not determine whether there had been any damage to the left side of the Chevrolet; and that the damage to the Pontiac was to the front and left side.

Officer Pruitt testified that he found an uncapped bottle of whiskey on the driver's side of the 1957 Pontiac and that the bottle exhibited in court was this same bottle which he retrieved from the Pontiac. He stated that he saw appellant standing by the driver's side of the Pontiac and that he voluntarily stated that he was driving the car. The officer said that appellant appeared groggy and couldn't stand straight but that his speech was not impaired. The witness also said that he did not smell any alcohol around the Chevrolet driven by deceased.

On cross-examination, the officer testified that he made out a police report following the accident but listed no violations of law and that he did not arrest appellant until after Vann died on December 22, 1964, three days later. On further cross-examination, the officer testified that the Chevrolet automobile was so damaged he couldn't tell what kind of car it was; that he couldn't determine the exact model because he was "not that good at automobiles"; that the car appeared to have "rolled" and that it was not damaged all over.

Burton L. Simmons, a police officer for the City of Prichard, testified that he and Officer Pruitt went to the scene of the collision shortly after it occurred and that he observed skid marks which went almost to the rear of appellant's car but did not go all the way up to it, stopping approximately fifteen feet away. He said that the damage to the Chevrolet was to the right front and top and that he did not notice any damage to any trees and admitted that he did not look at them.

Dr. W. Frank Cope, a qualified practicing neurological surgeon, testified that he attended deceased and that in his opinion the cause of his death on December 22, 1964, was a brain injury resulting from a traumatic injury.

The State's next witness was Norman Weldy, a member of the Prichard Fire Department, who testified that he happened to be in the vicinity of the collision on a routine fire call when he came upon the scene of the collision. He stated that he assisted in removing deceased from his automobile; that he was strapped in the automobile and that it had to be lifted to remove him; that he was pretty sure that neither door would open; and that he did not know which automobile was on which street prior to the collision.

Douglas C. Hammac testified that he operated a wrecker business and came upon the scene from a service call; that he tried unsuccessfully to remove appellant and another individual from the Pontiac but they were "pinned in"; that he then went to the Chevrolet to assist in removing deceased; and that it was necessary to lift the car because the deceased was "pinned in." He stated that he examined the Chevrolet and it was damaged all over and that he could not determine the "center of damage" because the car was "torn up so bad I [he] couldn't say."

Prichard Police Detective Lieutenant T. J. Blake testified that he had had experience both practical and academic in investigating automobile accidents and that he examined the wreck scene "subsequent to the night of the wreck." He stated that he measured certain distances at the site; that there is a stop sign nine feet from the intersection on Wasson Street; that he examined the Chevrolet at the wrecking yard and it appeared to him at that time that the right front fender and wheel had received an impact. He stated that he did not make notes on natural objects at the scene.

Appellant's first witness was Floyd Spencer who testified that he was appellant's second cousin and that they worked together at Port City Construction Company; that on the date in question they had both worked in Fort Walton, Florida; that he returned to the company office in Prichard at about 11:15 P.M. and that appellant arrived shortly thereafter. Spencer stated that he and appellant left the office in a 1957 Pontiac; that appellant was driving and that he (the witness) had a bottle of whiskey from which he was drinking and that appellant did not drink from that bottle of whiskey. He stated that the accident happened suddenly; that the deceased's car ran right across the road in front of appellant; and that he awakened in the hospital.

On cross-examination, the witness said that he lived with appellant. He also said that the front portion of appellant's car struck the Chevrolet and that the appellant "swove to the right to try to dodge the car."

Next, appellant testified in his own behalf. He stated that he was driving his 1957 Pontiac home from work, going north on Highway 45, when deceased pulled out in front of him. On cross-examination, appellant admitted that there were several ways to get to the scene of the accident from his office but that the route he chose that night had better roads, and that there are less red lights on this route. He stated that he had not had anything to drink that night.

On rebuttal, the State recalled witness T. J. Blake, Detective Lieutenant with the Prichard Police Department, who testified that he is familiar with the office of Port City Construction Company located on the Rebel Road and that to go from this office to the scene of the accident you can follow several different routes and that he would estimate that the road which appellant stated he was travelling to be one quarter of a mile longer than the others and that he did not know which route appellant actually took.

Appellant also argues that the trial court erred in admitting into evidence State's Exhibit No. 2, the diagram drawn up by Officer Pruitt just before the trial from the original police report, since such evidence was shown to be inaccurate.

■ We do not feel that this constituted error as the diagram was admittedly sketched from a police report and did not purport to be an accurate work of engineering. The correctness of the diagram was a question for the jury. This court has said in Riley v. State, 21 Ala. App. 655, 111 So. 649, the following regarding the admission of a diagram:

"* * * and in view of the fact that the diagram did not purport to be, and was not offered by the state as being, an accurate work of engineering, but was, at most, offered as a sort of memorandum of the situation, the court did not err in allowing it to go to the jury. The correctness of the diagram, as well as the accuracy of the testimony relative thereto, was a question for the jury, as was also the extent to which they were aided by said diagram."

Appellant contends that there was error in the denial of a motion for new trial based upon "newly discovered" evidence. In support of this proposition, appellant submitted three affidavits, Exhibits 1, 2 and 3.

■ Appellant's Exhibit 1 is an affidavit by F. W. Rowe, a registered land surveyor who examined both the police report diagram and the State's Exhibit 2 as well as the actual location of the site where South Wasson Street intersects with Highway 45. He pointed out several discrepancies; as, the diagram being a few degrees off, evidence of a sign not shown in the police report diagram, etc. We adhere to our pronouncement that the diagram was a question for the jury and did not purport to be an accurate work of engineering.

Appellant's Exhibit 2 is an affidavit by J. D. Porter in whose yard appellant's automobile landed after the collision. He stated that the tracks going across the highway from Wasson Street to the curb were made by a car in a previous accident several days before. The record reveals that Douglas C. Hammac, operator of a wrecker business had testified during the trial that there was an accident in the same spot the night before. Therefore, appellant had the benefit of this evidence during the trial and it is not to be considered new evidence. In Evans v. State, 38 Ala.App. 187, 87 So.2d 435, this court stated:

"The evidence that could be presented by the witness Barfield would be merely cumulative and corroborative of the evidence of which the appellant had the benefit during his trial. Under such conditions a new trial is not authorized."

Appellant's Exhibit 3 is an affidavit by Harold E. Quinnelly, a partner in appellant's company, who affirms that appellant did go down Highway 45 and enter the "Rendevous." This is approximately the same testimony of appellant and his cousin, Floyd Spencer, and is therefore not "new evidence." Evans v. State, supra.

Appellant also contends that the trial court erred in denying his motion for a new trial based on insufficiency of the evidence and that the verdict was contrary to the evidence.

In Cobb v. Malone, 92 Ala. 630, 9 So. 738, this court ruled that the trial court "will not be reversed, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust."

Though there was a conflict in the evidence which presented a question for determination by the jury, the jury heard the evidence and observed the witnesses as they testified. The credibility and weight of their testimony was a matter for the jury, which found appellant guilty. We do not feel that the verdict was contrary to the evidence, nor do we feel that the trial court erred in denying a motion for a new trial.

This cause is due to be and the same is hereby

Affirmed.